385 So.2d 1186 (1980)
STATE of Louisiana
v.
Sam BOOKER, Jr.
No. 65384.
Supreme Court of Louisiana.
January 28, 1980.
On Rehearing July 7, 1980.
*1188 Wellborn Jack, Jr., Jack & Jack, Shreveport; Claude R. Sledge, Mansfield, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James Lynn Davis, Dist. Atty., Herman L. Lawson, Asst. Dist. Atty., for plaintiff-appellee.
BLANCHE, Justice.
Defendant was charged by bill of information with attempted first degree murder in violation of R.S. 14:27. The jury, by a vote of 10 to 2, found defendant guilty of attempted second degree murder. R.S. 14:27. Defendant was sentenced to 36 years at hard labor.
At the end of the trial, defense counsel moved for a new trial on the basis that no evidence of one of the essential elements of second degree murder was presented to the jury. Defense counsel also objected to the sentence by alleging that the trial judge failed to follow the sentencing guidelines of C.Cr.P. art. 894.1 and that a 36-year sentence for this particular defendant is excessive. The trial judge denied both motions and defendant appeals.
The shooting for which defendant was convicted occurred in a barroom which defendant was managing on the night of the crime. On January 20, 1979, the victim, Willie Brady Hambrick, and defendant's stepdaughter, Jeanette August, got into an altercation which resulted in Hambrick trying to hit Miss August after she threw catsup on him. The defendant, with gun in hand, broke up the fight and told Hambrick to leave. Hambrick began heading for the door, but when he neared the door, the defendant fired two shots, the second of which hit Hambrick in the side. At the trial, defendant claimed self-defense, testifying that he fired the gun when he saw the victim reaching into his pocket for what the defendant thought was a gun.
Based on these facts, the jury convicted the defendant of attempted second degree murder. Under the applicable law, second degree murder was defined as the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill.
Defense counsel argued that the conviction should be reversed because no evidence was presented at trial of an essential element of second degree murder, that is, that defendant was engaged in the perpetration or attempted perpetration of any of the felonies enumerated in the definition of second degree murder.
In C.Cr.P. art. 814, our legislature has expressly provided the responsive verdicts for certain well-known crimes. That provision designates attempted second degree murder as a responsive verdict to a charge of attempted first degree murder. C.Cr.P. art. 814. The state relies upon established jurisprudence that in Louisiana, if there is sufficient evidence in the record to support a conviction for a greater offense (which includes the one for which the defendant is *1189 convicted), the evidence necessarily and automatically will support a conviction of the lesser offense which has been made responsive by legislative action. State v. Cooley, 260 La. 768, 257 So.2d 400 (1972); State v. Peterson, 290 So.2d 307 (La.1974); State v. Madison, 319 So.2d 912 (La.1975); State v. Hoffman, 345 So.2d 1 (La.1977); State v. Qualls, 353 So.2d 978 (La.1978).
We note that in these cases, the responsive verdicts were lesser and included offenses in that the essential elements of the lesser crimes found by verdict were essential elements of the greater crime charged. This case presents a unique problem because the redefinition of second degree murder in 1978 resulted in an essential element of second degree murder, the commission of an enumerated felony not being an essential element of the crime of first degree murder.
Prior to the 1978 revision of the second degree murder statute, a conviction of first degree murder required proof of the specific intent to kill or inflict great bodily harm.[1] The jury could impose the death penalty upon proof of an aggravating circumstance, one of which was the commission of one of several enumerated felonies.[2] A second degree murder conviction required proof of either (1) the specific intent to kill or inflict great bodily harm or (2) the perpetration of one of several felonies.[3] Thus, the definition of first degree murder included all the essential elements (killing with specific intent) of one type of second degree murder.
In 1978, the legislature redefined second degree murder to be the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of one of several enumerated felonies, even though the offender has no specific intent to kill or to inflict great bodily harm,[4] making *1190 felony murder the only type of second degree murder. The definition of first degree murder remained killing with specific intent. Second degree murder also remained a statutory responsive verdict to a charge of first degree murder. See C.Cr.P. art. 814. Thus, under the 1978 scheme, an essential element of second degree murder, the perpetration or attempted perpetration of an enumerated felony, is not included within the definition of first degree murder. As a consequence, the evidence required to prove first degree murder no longer proved second degree murder.
We have recognized that, notwithstanding that the legislature has provided statutorily for a responsive verdict, this Court cannot approve such a provision if it offends some constitutional principle. State v. Peterson, supra. In Peterson, we tested the rational basis for the legislature's determination that manslaughter was a responsive verdict to first degree murder by analyzing whether the greater offense necessarily includes the elements of the lesser offense. We held manslaughter to be a proper responsive verdict to first degree murder because the heat of passion provision in the definition of manslaughter was found to be in the nature of a defense mitigating the killer's culpability and not an element of the crime of manslaughter. Indeed, we have recognized that whether the elements of the lesser offense are included in the definition of the greater offense is the appropriate test for determining permissible responsive verdicts for crimes not provided for in C.Cr.P. art. 814. State v. McCoy, 337 So.2d 192 (La.1976); State v. Stewart, 292 So.2d 677 (La.1974).
An application of the Peterson analysis to the applicable definitions of first and second degree murder can only result in our concluding that no rational basis exists for making second degree murder responsive to first degree murder.[5] A jury can acquit a defendant of first degree murder, thus finding no specific intent to kill, and find him guilty of second degree murder, even though no evidence exists to support a conclusion that the defendant was engaged in the perpetration or attempted perpetration of one of the felonies enumerated in the 1978 definition of second degree murder, an essential element of the crime. This is exactly what occurred in the instant case, and prompts our holding that due process of law requires that responsive verdicts provided for in statutory enactments by the legislature not invite the jurors to arbitrarily choose a verdict which clearly is not supported by the evidence and which is not a lesser included offense of the greater offense charged. La.Const. art. 1, § 2; U.S. Const. Amend. 14. Accordingly, the defendant's conviction is reversed.
In so holding, we do not overturn case law holding that if there is some evidence in the record to support a conviction for a greater offense, the evidence will support a conviction of the lesser offense which has been made responsive by the legislature, see e. g. State v. Cooley, supra, so long as the elements of the lesser offense are included in the greater offense. A defendant has not been prejudiced if the evidence shows guilt of a greater offense because by proving the greater offense, the state has necessarily proved the elements of a lesser and included offense. In such a situation, the defendant cannot be heard to complain that *1191 he committed a crime more serious than the one of which he was convicted. State v. Peterson, supra; State v. Madison, supra.
For the above reasons, the conviction and sentence is reversed and the case is remanded to the district court with orders to dismiss the prosecution against the defendant.
REVERSED.
DENNIS, J., concurs and will assign reasons.
DIXON, J., dissents with reasons.
MARCUS and WATSON, JJ., dissent for reasons assigned by DIXON, J.
DIXON, Justice (dissenting).
I respectfully dissent.
If the verdict is guilty of a crime made responsive by the legislature to the offense charged in the bill, the test is:
"If there is sufficient evidence in the record to support a conviction for a greater offense (which includes the one for which the defendant is convicted), the evidence necessarily and automatically will support a conviction of the lesser offense which has been made responsive by legislative action." State v. Cooley, 260 La. 768, 773, 257 So.2d 400, 402 (1972).

ON REHEARING
DENNIS, Justice.
On rehearing we conclude that (1) our original decision to reverse defendant's conviction of attempted second degree murder was correct for the reasons hereinafter assigned; and (2) the case should be remanded for further proceedings consistent with this opinion.
On original hearing we reversed defendant's conviction because, at the time of the offense in question, a charge of attempted first degree murder provided no rational basis for a conviction of attempted second degree murder. This holding was correct. Some of the explicatory language of our initial opinion departed from this rationale, however, and may incorrectly imply that our decision actually was based on the state's failure to present sufficient evidence to prove that the homicide occurred when the offender was engaged in the perpetration of a separate felony. Therefore, in order to avoid misinterpretation, we explain anew the controlling principles of our decision.
The problem of this case is that at the time of the offense in question first degree murder was defined as a homicide with specific intent to kill or to greatly harm, whereas second degree murder was defined exclusively as a killing when the offender is engaged in the perpetration of a major felony, even though he has no intent to kill or to greatly harm. The defendant in this case was charged with attempted first degree murder but convicted of attempted second degree murder. Thus, the defendant was convicted of criminal conduct which actually was not included within a charge of attempted first degree murder, viz., attempting to kill a person when the offender is engaged in the perpetration of a major felony. See La.Acts 1976, No. 657; La.Acts 1978, No. 796.
No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in all courts, state or federal. Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948); Re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). It is a violation of due process either to send an accused to prison following conviction of a charge on which he was never tried or to convict him upon a charge that was never made. DeJonge v. Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1936); Cole v. Arkansas, supra; Re Oliver, supra; cf. State v. Duhon, 142 La. 919, 77 So. 791 (1918). Accordingly, it was a violation of due process to convict the defendant upon a charge of attempted second degree murder, a charge of which he was not given adequate notice and against which he had no chance to defend.
*1192 A lesser offense is included in the charge of the greater offense if all of the elements of the lesser crime are included in the definition of the greater offense. State v. McCoy, 337 So.2d 192 (La.1976); State v. Stewart, 292 So.2d 677 (La.1974); State v. Poe, 214 La. 606, 38 So.2d 359 (1948); State v. Roberts, 213 La. 559, 35 So.2d 216 (1948); cf. La.R.S. 14:5. Since the definition of the crime of attempted first degree murder did not include the element that the offender must be engaged in perpetration of a felony at the time of the offense, an essential element of second degree murder in this case, it is plain from the definitions of the two crimes that all elements of the lesser offense were not necessarily included in the greater offense. See La.Acts 1976, No. 657; La.Acts 1978, No. 796. Two simple illustrations suffice to demonstrate: (1) In attempted first degree murder, commission of a separate felony is not essential, whereas the offender's contemporaneous perpetration of one of the statutorily prescribed felonies was a necessary ingredient of attempted second degree murder at the time of the homicide herein, and (2) If A intentionally shot at B, missing him, he was amenable to a charge of attempted first degree murder, but he was not amenable to a charge of attempted second degree murder unless he was perpetrating one of the statutorily prescribed felonies at the time of the shooting.
When the legislature's 1978 amendment to the definition of second degree murder partially excluded that offense from a charge of first degree murder, corresponding legislation was required to remove the lesser crime from the list of responsive verdicts provided by La.C.Cr.P. art. 814 when the indictment charged first degree murder. The legislature's failure to repair Louisiana Code of Criminal Procedure Article 814 in this instance, however, did not make a charge of first degree murder include or constitute notice of a charge of second degree murder. The main function of La.C.Cr.P. art. 814 is to resolve which verdicts are responsive for the most common crimes by definite restrictive lists. See La.C.Cr.P. art. 814 Official Revision Comments (a)-(c). Substantive definitions of crimes are not provided for in La.C.Cr.P. art. 814 and the criteria for determining whether elements of lesser crimes are totally included within greater offenses are not codified in the Code of Criminal Procedure. See La.C.Cr.P. art. 814, Official Revision Comment (c). Although the legislature's classification of an offense as a responsive verdict is entitled to great weight in deciding whether it is included in the charged offense, see State v. Hoffman, 345 So.2d 1 (La.1977); State v. Peterson, 290 So.2d 307 (La.1974); State v. Edwards, 287 So.2d 518 (La.1973), constitutionally the substantive elements of the crime definitions must govern in determining whether due process notice of lesser charges is included in an indictment. See In the Interest of Batiste, 367 So.2d 784 (La.1979).
Since we have concluded that the defendant was denied a safeguard guaranteed by due process of law, his conviction and sentence are reversed and the case is remanded to the district court for proceedings not inconsistent with this opinion. Because this reversal does not result from evidentiary insufficiency or constitute a decision that the state failed to prove its case, the double jeopardy clause does not bar further prosecution of defendant in connection with the alleged criminal activity. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). The jury's verdict herein, however, operates as an acquittal and bar of a second prosecution of defendant on the charge of attempted first degree murder. Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 221 (1957).
REVERSED AND REMANDED.
LEMMON, J., concurs and assigns reasons.
DIXON, C. J., concurs for reasons assigned by LEMMON, J.
BLANCHE, J., concurring in part and dissenting in part for reasons assigned.
MARCUS and WATSON, JJ., dissent and assign reasons.
*1193 LEMMON, Justice (concurring).
Although the majority opinion correctly concludes that one element of the lesser offense is not included in the definition of the greater offense, the primary reason that defendant's conviction of attempted second degree murder must be set aside is that it is impossible for one to attempt the conduct constituting the offense of second degree murder under the statutes existing at the time.
In January, 1979 second degree murder was defined as the killing of a human being when the offender is engaged in the perpetration of certain enumerated offenses (not applicable here), even though the offender has no intent to kill or to inflict great bodily harm. Attempt requires that the offender act with a specific intent. R.S. 14:27. In a logical analysis one cannot specifically intend (attempt) to do something that one does not intend to do. One therefore cannot attempt to kill a human being in the course of perpetrating another crime without intending to kill the victim. In other words there can be no such crime as attempted felony murder. See State v. Adams, 28 So.2d 269 (La.1947); Reporter's Comment, R.S. 14:27.
The trial court erred in instructing the jury that they could return a verdict of attempted second degree murder (although the true error was caused by legislative retention of that crime as a responsive verdict to attempted first degree murder). See State v. White, 315 So.2d 301 (La.1975); State v. Comeaux, 277 So.2d 647 (La.1973); C.Cr.P. art. 813. The error requires reversal. However, since the reversal was not based on insufficiency of evidence and since the jury may have concluded on the evidence (but for erroneous instruction) that defendant was guilty of attempted manslaughter or some other lesser and included offense, defendant may be retried for other lesser and included offenses to the crime of attempted first degree murder.
BLANCHE, Justice (concurring in part, dissenting in part).
I concur in the majority opinion's reversal of defendant's conviction, but dissent from that part of the opinion remanding the case to the district court for further proceedings for reasons previously assigned.
I further disagree with that part of the opinion which finds that defendant had no notice of the crime of which he had been convicted, because as a matter of law, it was a responsive verdict to the crime of which he had been charged.
MARCUS, Justice (dissenting).
I would not reverse the conviction and sentence for attempted second degree murder because it is a responsive verdict to the crime charged (attempted first degree murder). Accordingly, I respectfully dissent.
WATSON, Justice, dissenting.
I respectfully dissent for the reasons assigned by Blanche, J.
NOTES
[1] La.Acts 1976, No. 657 amending La.R.S. 14:30. First degree murder was defined as "the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm." In 1979, the definition of first degree murder was changed to:

§ 30. First degree murder
First degree murder is the killing of a human being:
(1) when the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery;
(2) when the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties;
(3) when the offender has a specific intent to kill or to inflict great bodily harm upon more than one person; or
(4) when the offender has specific intent to kill or inflict great bodily harm and has offered, has been offered, has given, or has received anything of value for the killing.
For the purposes of Paragraph (2) herein, the term peace officer is defined to include any constable, marshal, deputy marshal, sheriff, deputy sheriff, local or state policeman, game warden, federal law enforcement officer, jail or prison guard, parole officer, probation officer, judge, attorney general, assistant attorney general, attorney general's investigator, district attorney, assistant district attorney, or district attorney's investigator.
Whoever commits the crime of first degree murder shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence in accordance with the recommendation of the jury. (approved June 29, 1979)
[2] La.Acts 1976, No. 694 adding La.C.Cr.P. art. 905.3. The procedure is the same today.
[3] In La.Acts 1977, No. 121 amending La.R.S. 14:30.1, second degree murder was defined as:

"A. The killing of a human being when the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill; or
B. The killing of a human being when the offender has a specific intent to kill, under circumstances that would be first degree murder under Article 30, but the killing is accomplished without any of the aggravating circumstances listed in Article 905.4 of the Louisiana Code of Criminal Procedure."
[4] La.Acts 1978, No. 796 amending La.R.S. 14:30.1. Second degree murder was redefined to be:

"... the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm."
In 1979 the definition of second degree murder was changed to:
§-30.1. Second degree murder
Second degree murder is the killing of a human being:
(1) when the offender has a specific intent to kill or to inflict great bodily harm; or
(2) when the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. (approved June 29, 1979)
[5] For similar analysis and conclusion, see Baker, Jr., J., "work of Appellate Courts1975-1976", 37 La.L.R. 562 (1977).