JOHN S. COVINGTON, Judge.
Charles Washington, Sr., was charged by grand jury indictment with the second degree murder of Corrine Maneaux, a violation of LSA-R.S. 14:30.1. Washington pled not guilty and after a jury trial, was found guilty as charged. The trial court sentenced Washington to life imprisonment without benefit of probation, parole or suspension of sentence.
From his conviction and sentence, defendant appeals, urging ten assignments of error:
1.The trial court erred by curtailing the cross examination of a key state witness on an essential and significant point in her testimony.
2. The trial court erred by instructing the jury on manslaughter under LSA-R.S. 14:31(2)(a) and (2)(b), as the theory and evidence of the prosecution was that this homicide was a “specific intent” killing under LSA-R.S. 14:30.1(1).
3. The trial court erred by curtailing the direct examination of defendant on the history and dimensions of his alcoholism.
4. The trial court erred in allowing the prosecution to present rebuttal evidence by recalling a state witness to testify concerning defendant’s sobriety.
5. The trial court erred by refusing to give defendant’s requested instruction on intoxication.
6. The trial court erred by denying defendant’s motion to strike from the record an alleged inculpatory statement.
7. The trial court erred by denying defendant’s motion for new trial.
8. The trial court erred by denying defendant’s motion for post verdict judgment of acquittal.
9. The trial court erred by denying defendant’s motion for bond pending appeal.
10. Any and all other errors patent on the face of the record.
Assignments of error numbers five, six, and nine have not been briefed and are thereby considered abandoned. Uniform Rules — Courts of Appeal, Rule 2-12.4.
During the night of August 19, 1984, the victim, Corrine Maneaux, sought the assistance of local law enforcement officers in evicting Charles Washington, Sr. (defendant) from her home. Defendant followed Ms. Maneaux to the Franklin Police Department headquarters where he first encountered Officer Calvin Sherman. In the presence of Ms. Maneaux, defendant was advised by Officer Sherman that he should return to the Maneaux residence and remove his belongings. Officer Sherman and Ms. Maneaux drove to her home and waited some time for defendant. When he did not arrive, Officer Sherman departed. A short time later, defendant arrived at the Ma-neaux residence and Officer Sherman re *948 turned at Ms. Maneaux’s request. In accordance with Ms. Maneaux’s directive, Officer Sherman ordered defendant to leave her residence. Defendant complied, leaving on foot, but refused to take any of his belongings with him. In the presence of Officer Sherman, Ms. Maneaux telephoned her son, Darrell Maneaux, and asked him to come spend the night at her home.
A short time later, Officer Sherman, who had returned to the police station, received another call from Ms. Maneaux. She reported that defendant had entered her home by kicking in a door and she requested police assistance. After a thorough search of the residence, Officer Sherman and Detective Trahan finally located defendant hiding under a bed. By that time, Darrell Maneaux and his girlfriend, Carla Madison, had arrived at the Maneaux home. Once again, defendant was instructed to leave, and he did so, on foot. About forty-five minutes to one and one-half hours had elapsed from the initial encounter at the police station to that point in time.
Defendant walked to his automobile, parked on another street about one block from Ms. Maneaux’s home. Detective Tra-han was supposed to monitor the situation; however, he was called away to assist in the investigation of a burglary complaint. Some ten to twenty minutes after finding defendant hiding under a bed, the officers were dispatched to the Maneaux residence to investigate a reported shooting.
Carla Madison testified at trial that when defendant returned for the last time she and Ms. Maneaux were seated in the living room. As defendant entered the home, he passed near Darrell Maneaux. Defendant advised Darrell that he wanted to get one thing, and he would then leave. Defendant walked through the living room and entered a bedroom. He then exited the bedroom and fired all six shots from a revolver, directing his shooting at Ms. Maneaux, who had been seated on a coffee table. Four of the six bullets struck Ms. Ma-neaux, fatally wounding her. Defendant fled the scene by automobile. He was apprehended by Trooper Eugene White about thirty minutes later. When defendant was arrested, a gun, later identified as the murder weapon, was on the front seat of his automobile. Examination of the weapon by Trooper White revealed that all six rounds had been fired.
ASSIGNMENT OF ERROR NUMBER ONE:
By means of this assignment, defendant contends that the trial court erred by curtailing his cross examination of Carla Madison, a key state witness, thereby preventing his impeachment of that witness on a crucial inconsistency.
The record reveals that, on direct examination, Carla Madison testified that defendant was aiming his gun at Ms. Maneaux when he opened fire. On cross examination, defendant was afforded broad latitude in his examination of Ms. Madison. Her attention was directed to a statement made to law enforcement officers contemporaneously with the incident and to her testimony at the preliminary examination. In addition, defense counsel liberally quoted from portions of both sources during his questioning of Ms. Madison. After much semantical jousting, Ms. Madison expressly admitted that she had not used the word “aim”, either during her oral statement or during her preliminary examination testimony, when describing defendant’s firing of his gun. At that point, the trial court sustained the prosecutor’s objection which sought to limit further exchange concerning use of the word “aim.”
In this instance, Ms. Madison distinctly admitted making the prior statements. However, the quoted portion of her statements failed to disclose a prior contradiction. Rather than stating defendant had fired without aiming, as defendant suggested, Ms. Madison told the police that defendant “just came out firing.” At the preliminary examination, she testified that defendant shot at Ms. Maneaux. Defendant’s line of questioning was fully exhausted. It was both repetitious and fruitless as establishing a foundation for impeaching Ms. Madison. See LSA-R.S. 15:493. The *949 trial judge is vested with sound discretion to stop unnecessary examination. His ruling will not be disturbed unless an abuse of discretion is shown. LSA-R.S. 15:275; State v. Naas, 409 So.2d 535 (La.1981), cert. denied, 457 U.S. 1119, 102 S.Ct. 2933, 73 L.Ed.2d 1332 (1982). No such abuse has been shown here.
Accordingly, this assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER TWO:
Defendant contends that the trial court erred in instructing the jury, over defendant’s objection, on the responsive verdict of manslaughter as defined by subparts (2)(a) and (2)(b) of LSA-R.S. 14:31. Defendant argues that inclusion in the charge of these “felony or misdemeanor” manslaughter provisions dealing with unintended killings, as an alternative manslaughter definition was confusing to the jury and prejudicial to the defendant. He urges that only the “heat of passion” manslaughter provision contained in LSA-R.S. 14:31(1) could reasonably be inferred from the evidence presented in this case.
It should be noted that defendant does not allege any error in the trial court’s definition of “heat of passion” manslaughter as set forth in the disputed charge. Rather, defendant cites State ex rel. Elaire v. Blackburn, 424 So.2d 246 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983), and State v. Booker, 385 So.2d 1186 (La.1980), as authorities supporting his allegation of prejudicial error stemming from inclusion of “felony or misdemeanor” manslaughter, a responsive verdict not supported by the evidence. Elaire and Booker, however, address factual situations wherein a defendant was actually convicted of a responsive verdict not supported by the evidence or of a charge to which he was not given adequate notice. In the instant case, the jury returned a verdict of guilty of second degree murder, the offense charged. The arguably erroneous inclusion of a lesser offense responsive verdict in the charge to the jury cannot be said to have prejudiced the defendant when the jury returned a verdict of guilty of the offense charged. State v. Prestridge, 399 So.2d 564 (La.1981). It is not demonstrated how the inclusion of the lesser offense responsive verdict, as an expressly alternative definition of manslaughter, could have led to confusion which would have had a bearing on the jury’s finding that defendant was guilty of the offense charged.
Accordingly, this assignment lacks merit.
ASSIGNMENT OF ERROR NUMBER THREE:
By means of this assignment, defendant contends that the trial court erred in restricting direct examination of defendant. A review of the record reveals that defense counsel was allowed to elicit extensive testimony from defendant with respect to defendant’s history of alcohol abuse. However, the prosecutor objected when defense counsel sought to explore defendant’s treatment for alcoholism obtained after the shooting of Ms. Maneaux. The trial court sustained the state’s objection on the basis that defense counsel had failed to establish the relevance of that line of questioning at that point in time.
LSA-R.S. 15:435 provides that evidence sought to be introduced at trial must be relevant to a material issue. In questions of relevancy, much discretion is vested in the trial judge. State v. Andrews, 451 So.2d 175 (La.App. 1st Cir.), writ denied, 457 So.2d 17 (La.1984). Such rulings will not be disturbed on appeal in the absence of a showing of such abuse of discretion. State v. Raymond, 447 So.2d 51 (La.App. 1st Cir.), writ denied, 449 So.2d 1347 (La.1984). We find no manifest abuse of discretion herein.
One defense strategy relied on defendant’s alleged voluntary intoxication at the time of the shooting under such circumstances which precluded his forming the specific criminal intent to commit the charged offense. See LSA-R.S. 14:15(2). However, it was not until after the objected-to ruling that defendant testified about his consumption of alcohol on the day of *950 the shooting. Thereafter, defendant was allowed to testify, without objection, about detoxification treatment he received subsequent to Ms. Maneaux’s death.
For the foregoing reasons, this assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER FOUR:
In this assignment, defendant asserts that the trial court erred in allowing the state to recall Trooper White, the arresting officer, to testify on rebuttal that defendant was not intoxicated at the time of his arrest.
Generally, rebuttal evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by the adverse party. LSA-R.S. 15:282; State v. Mack, 435 So.2d 557 (La.App. 1st Cir.), writ denied, 440 So.2d 727 (La.1983). The determination of whether the evidence is rebuttal evidence, and therefore admissible, is an issue which is addressed to the sound discretion of the trial court. State v. Mack, supra.
The record reveals that defense counsel mistakenly believed that Trooper White had addressed the issue of defendant’s alleged intoxication during his initial testimony at trial. Therefore, defendant’s objection was grounded primarily on an argument that Trooper White’s further testimony on that point would be cumulative. Although the state’s case-in-chief consisted of testimony addressing the issue of defendant’s alleged intoxication, Trooper White was not then questioned on that point.
Defendant took the stand on his own behalf and called Officer James Burrell to testify. Defendant testified that he was intoxicated on the night in question. Officer Burrell, who processed defendant immediately following his arrest, testified that defendant did not appear intoxicated to him.
In the present instance, the testimony offered in rebuttal was clearly proper for such purpose. The testimony offered by the defense sought to prove that defendant was voluntarily intoxicated at the time of the shooting. The state’s evidence thereafter offered did rebut this testimony.
Finding no abuse of discretion, this assignment of error is without merit.
ASSIGNMENTS OF ERROR NUMBERS SEVEN AND EIGHT:
By means of these assignments, defendant contends that the verdict of guilty of second degree murder is not supported by the evidence adduced at trial. Assignment of error number seven raises this issue by urging error in the trial court’s denial of defendant’s motion for new trial grounded on an allegation that the verdict was contrary to the law and the evidence. LSA-C. Cr.P. art. 851(1). Assignment of error number eight raises the same issue by citing error in the trial court’s denial of defendant’s motion for post-verdict judgment of acquittal. LSA-C.Cr.P. art. 821. We note that only the weight of the evidence, and not the legal insufficiency of the evidence, can be reviewed by the trial court in a motion for new trial under LSA-C.Cr.P. art. 851. State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). If the trial court finds the evidence legally insufficient, it must do so under LSA-C.Cr.P. art. 821.
Defendant urges in brief that the state failed to prove he had the requisite specific intent to kill or to inflict great bodily harm as required for second degree murder. The standard of review requires that we view the evidence in the light most favorable to the prosecution, then determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. Korman, supra.
To be guilty of second degree murder, under LSA-R.S. 14:30.1(1), a defendant must be found to have had specific intent to kill or to inflict great bodily harm. Specific intent is defined as the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Specific intent is a legal conclusion to be *951 resolved ultimately by the trier of fact. State v. Gibson, 460 So.2d 689 (La.App. 1st Cir.1984), writ denied, 464 So.2d 1376 (La.1985). Since specific criminal intent is a state of mind, it need not be proven as a fact, but may be inferred from the circumstances present and the actions oí the defendant. LSA-R.S. 15:445; State v. Mullins, 464 So.2d 459 (La.App. 1st Cir.1985).
The record reveals that defendant took the stand in his own behalf. Much of his testimony was devoted to detailing his consumption of alcohol on the evening of the crime. However, the testimony of Officer Sherman, Officer Burrell, Trooper White, and Darrell Maneaux, who all had contact with defendant either immediately before, during or after the shooting, was to the effect that defendant was alert, coherent and showed no signs of being intoxicated. Although defendant contends in his treatment of assignment of error number four that “the defense intended to rely upon a defense of intoxication,” defendant does not argue that voluntary intoxication defeated the element of specific intent.[1]
Defendant urges, however, that his firing of the gun was not directed at Ms. Maneaux. Defendant testified that he did not intend to kill anyone, and if he shot the gun, “[he] would have been shooting it at the big console TV.” Carla Madison, eyewitness to the incident, testified that just prior to the shooting defendant had passed through the living room where she and Ms. Maneaux were seated. After re-entering the living room from an adjacent bedroom, defendant immediately discharged all six rounds from a gun. Ms. Madison perceived that defendant was aiming the gun at Ms. Maneaux, and indeed, the autopsy revealed that four of the six bullets fired struck Ms. Maneaux. Although there was some se-mantical faltering during cross examination, Ms. Madison was unequivocal on redirect examination that defendant’s gun was pointed toward Ms. Maneaux when fired.
In addition, testimony of David Epstein, who was qualified as an expert in criminal-istics, revealed that the weapon discharged by defendant had a malfunction which rendered it slightly harder to pull back the trigger. This malfunction also precluded the possibility that the weapon could have been already cocked and, therefore, accidentally discharged by defendant.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31 (La.App. 1st Cir.1984). In viewing the evidence in the light most favorable to the prosecution, we are convinced that a rational trier of fact could have found beyond a reasonable doubt that defendant had the specific intent to inflict great bodily harm on the victim.
In the alternative, defendant urges that the evidence presented would have justified only a verdict of manslaughter. The “heat of passion” manslaughter provision [LSA-R.S. 14:31(1)] has all the elements of second degree murder, but in addition has the mitigating circumstance of sudden passion. State v. Tompkins, 403 So.2d 644 (La.1981). Having found the elements of second degree murder, the jury then had to determine whether the circumstances indicated that the crime was actually manslaughter.
Provocation may reduce a homicide to manslaughter if “the offense is committed in sudden passion ... immediately caused by provocation sufficient to deprive an average person of his control and cool reflection.” Nevertheless, “[provocation shall not reduce a homicide to manslaughter if the jury finds the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed.” LSA-R.S. 14:31(1); see also, State v. Tompkins, supra. Because the question of provocation, including whether the offender’s blood had actually cooled or whether the average per *952 son’s blood would have cooled, is one of fact, it is for the jury to determine. See State v. Rayford, 476 So.2d 961 (La.App. 1st Cir.1985).
In the instant case, the actions of defendant and Ms. Maneaux were described in detail by law enforcement officers who had contact with the couple during the night in question. Officer Sherman and Detective Trahan described defendant as rude and somewhat angry at Ms. Ma-neaux’s insistance that he leave her home. However, verbal exchange between Ms. Maneaux and defendant was limited to a minor argument during their first encounter at the police station. Carla Madison testified that Ms. Maneaux advised her that she wanted defendant to leave her home because he had accused her of “messing around” with other men. However, defendant related that he believed Ms. Ma-neaux wanted him evicted because he had come home drunk.
At the time of the shooting, defendant was described by Carla Madison and Darrell Maneaux as calm. Defendant’s own testimony at trial is most damaging to a theory of manslaughter. Defendant denied arguing with Ms. Maneaux during the night of the shooting and unequivocally stated that he was not angry when he commenced firing the gun. From these circumstances, the jury reasonably could have inferred that, despite some suggestion of provocation, defendant’s blood had actually cooled or that an average person’s blood would have cooled over the period of the evening.
Accordingly, we find these assignments of error without merit. Finding no errors patent on the face of the record, we affirm defendant’s conviction and sentence.
AFFIRM.

. Voluntary intoxication is a defense to a prosecution for "specific intent” second degree murder [LSA-R.S. 14:30.1(1) ] only if the circumstances indicate that it has precluded the presence of specific criminal intent. LSA-R.S. 14:15(2). In the instant case, the circumstances do not indicate that defendant was intoxicated.