657 So.2d 1106 (1995)
STATE of Louisiana
v.
Landon MARSHALL.
No. 94-KA-1282.
Court of Appeal of Louisiana, Fourth Circuit.
June 29, 1995.
Harry F. Connick, Dist. Atty. for Orleans Parish, Kim Madere Graham, Asst. Dist. Atty. for Orleans Parish, New Orleans, for appellee.
Bruce G. Whittaker, New Orleans, for appellant.
Before BARRY, BYRNES and WALTZER, JJ.
BARRY, Judge.
The defendant was convicted of second degree murder, La.R.S. 14:30.1, and sentenced to serve a life term at hard labor without benefit of parole, probation or suspension of sentence. The defendant now argues that the State does not have sufficient evidence to support the verdict.
Officer Smith testified that he was alone on patrol on September 18, 1993 at about 8:00 p.m. when he responded to a shooting in the 1500 block of Bienville Street. When he arrived Renaldo Cains was on the ground but unable to give information as to who shot him. Cains was taken to the hospital. No witnesses were available.
Officer Leary, a firearms expert, testified that seven cartridge casings found at the scene were fired by the same weapon. Three bullets found at the scene were fired from the same weapon. The cartridge casings and bullets were 9 mm, but he could not determine whether the bullets and casings *1107 were fired from the same gun or whether a small bullet fragment taken from the victim's body came from the same gun as the bullets or the casings.
Dr. Paul McGarry, an expert in forensic pathology, testified that Cains died at 10:57 p.m. on September 18, 1993 from the loss of blood from seven gunshot wounds; the most serious was a chest wound. Six were fired from behind him. There was no gunpowder on Cains' skin, so Dr. McGarry concluded that the gun was fired more than two to three feet from the victim.
Zelda Cains, Renaldo Cains' mother, testified that her son was shot after she left her home in the Iberville Housing Development to go to the grocery at about 7:00 p.m. When she returned the police and an ambulance were there and she was told that her son had been shot. On cross-examination she admitted she heard that Bowens[1] and Thomas Singleton had been shot earlier that morning. Her oldest son, Ricky, had informed her that Renaldo was implicated in the shootings.
Homicide Detective Demma was assigned to the case. He testified that Kevin Pollard and Anthony Thomas contacted him and stated that they witnessed the shooting of Cains in the courtyard of the Iberville Housing Development. Det. Demma took written statements and presented two photographic lineups to the witnesses and each identified the defendant and Bowens. Det. Demma denied knowledge of a grudge between the victim, Cains, and the defendant or Bowens.
Anthony Thomas, a friend of Cains, testified that he was visiting his mother who lived in the Iberville Housing Development. He was outside at a child's party with Cains' brother, Ricky, talking to a nine-year-old boy. About 7:30 or 7:45 p.m. Thomas heard one gunshot, turned around, and saw a person he knew as Daniel (Bowens) shooting Cains while standing over him. He heard at least 15 shots. He also saw the defendant, whom he knew as "Minnesota". He did not see the defendant fire a gun, but he saw the defendant with two guns in his hands (at least 9 mm). He also saw a large gun in Bowens' hand. Thomas stated that he was 20 feet away from the shooting. He said the defendant and Bowens ran. He did not see the victim with a weapon. He described the photo lineup in which he identified the defendant and Bowens and he identified the defendant in court. He denied that he had a grudge against the defendant.
Kevin Pollard ("Wolf"), who lived across the courtyard from Cains in the Iberville Housing Development, testified that he was about 50 feet from Cains when he heard a gunshot. He looked over and saw the defendant with a gun and Cains falling to the ground. On cross examination Pollard answered affirmatively when asked if he was sure the defendant had a gun and was shooting Cains. Pollard stated that he saw nothing in Cains' hands. After the first shot people scattered and Pollard heard more shots. Pollard testified that the defendant was not firing then; Bowens (whom he knew had been shot in the foot the same day) was shooting Cains. Pollard fled the scene. He described the photo lineups in which he chose the photographs of the defendant and Bowens and identified the defendant at trial.
Delmon Marzett testified that he and his friend O'Neal Ford had driven to his girlfriend's house on Conti St. in the Iberville development. He and Ford were standing on a back street and saw the defendant ("Minnesota") talking to a man and a woman. After the gunshots he and Ford tried to leave but their vehicle was blocked by the defendant's truck. Marzett admitted a conviction for simple robbery in 1991.
O'Neal Ford testified that he was with Marzett when he heard gunshots. He saw the defendant ("Minnesota") in a driveway talking to a girl. After the shots he ran with Marzett to the car. The defendant had to move his truck and they left.
Joe Williams, who lived in the Iberville Housing Development and was the defendant's friend, testified that he saw the defendant sitting in his truck talking to a young *1108 woman at the time of the shooting. Williams stated that he heard two different guns.
Coretta Quinn testified she ran from her apartment into the courtyard when she heard the first shot. She heard eight or nine more shots. She was looking for her nephew (who was running an errand) and her eight year-old daughter. She saw the defendant in a driveway talking to a girl. Ms. Quinn stated that earlier that day Singleton was shot during a shoot out with Cains. At one point she said that Bowens had been shot by Pollard ("Wolf") and another man, but later stated that Cains shot Bowens. She conceded that the defendant's brother married her mother. The defense recalled Pollard to the stand and he denied shooting Bowens.
Glenda Elzy, a nurse and evangelist, testified that the defendant was at a 7:30 p.m. meeting for Baptism candidates on the night of September 18, 1993. Although she did not remember the defendant's time of arrival, she stated that the meeting began between 7:30 and 8:00 p.m. and lasted until 10:00 or 10:30 p.m. News of the murder appeared on the television newscast and the defendant stated that he knew the victim.
Elizabeth Williams, the treasurer of Ms. Elzy's prayer group, testified that the defendant was present at the September 18 meeting.

LAW AND ANALYSIS
Second degree murder is the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm. La.R.S. 14:30.1. Sufficient evidence of intent to kill has been found where the defendant shot a gun at the victim. State v. Davis, 93-0663 (La.App. 4 Cir. 2/25/94), 633 So.2d 822; State v. Pittman, 604 So.2d 172 (La.App. 4th Cir.1992), writ denied, 610 So.2d 796 (La.1993).
A principal is defined as a person concerned in the commission of a crime, whether present or absent, and whether he directly commits the act constituting the offense, aids and abets in its commission, or directly or indirectly counsels or procures another to commit the crime. La.R.S. 14:24. Only persons who knowingly participate in the planning or execution of a crime are principals. Mere presence at the scene is not enough. State v. Pierre, 93-0893 (La. 2/3/94), 631 So.2d 427. An individual may only be convicted as a principal for a crime for which he personally has the requisite mental state. State v. Holmes, 388 So.2d 722 (La.1980).
Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Specific criminal intent may be proved by direct evidence or inferred from the actions of the defendant or the circumstances present. State v. Hawkins, 93-1260 (La.App. 4th Cir. 1/27/94), 631 So.2d 1288, writ denied, 94-0301 (La. 6/24/94), 640 So.2d 1341.
Under Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), to determine sufficiency of the evidence a reviewing court must decide whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.
Kevin Pollard testified that he saw the defendant with a gun and Cains fall to the ground when the first shot was fired. Anthony Thomas testified that the defendant had two guns in his hands when Bowens fired repeated shots into Cains. Both witnesses saw Bowens and the defendant flee. Williams stated that he heard two guns and Officer Leary, the firearms expert, could not determine whether two 9 mm guns were involved. Defense witnesses, Williams, Marzett, Ford, and Quinn, place the defendant near the courtyard at the time of the shooting. Only Ms. Elzy and Ms. Williams, who were not certain as to the time of the defendant's arrival at the meeting, testified that he was elsewhere.
The jury made credibility determinations and could have reasonably inferred the requisite specific intent. When viewed in the light *1109 most favorable to the prosecution, the evidence is sufficient to prove beyond a reasonable doubt that the defendant actively participated in or aided and abetted in the commission of the killing of Cains with the specific intent to kill or to inflict great bodily harm.
We have reviewed the record for errors patent and there are none.
The defendant's conviction and sentence are affirmed.
AFFIRMED
NOTES
[1] Co-defendant Daniel Bowens pleaded not guilty to murder and was found incompetent to proceed to trial.