672 So.2d 1034 (1996)
STATE of Louisiana
v.
Michael SMITH.
No. 94-KA-2588.
Court of Appeal of Louisiana, Fourth Circuit.
March 27, 1996.
*1036 Sherry Watters, Orleans Indigent Defender Program, New Orleans, for defendant/appellant
Harry F. Connick, District Attorney for Orleans Parish, Susan M. Erlanger, Assistant District Attorney for Orleans Parish, New Orleans, for plaintiff/appellee.
Before BARRY, BYRNES, and PLOTKIN, JJ.
BARRY, Judge.
The defendant was indicted for the second degree murder of Eddie Smith (La.R.S. 14:30.1), the jury deadlocked, and the trial court declared a mistrial. After a second trial by jury, the defendant was found guilty as charged and sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. The defendant was also indicted for the attempted second degree murder of Patricia Norman, was convicted of aggravated battery (La.R.S. 14:34) after a bench trial, and sentenced to ten years at hard labor with the sentences to run concurrently.
The defendant argues:
1) the evidence was insufficient to prove aggravated battery;
2) the evidence was insufficient to prove second degree murder; the defendant proved and the State did not rebut evidence to show intoxication; at worst the evidence proves manslaughter;
3) the ten year sentence for aggravated battery is excessive.

FACTS
Several family members testified that on Christmas Eve of 1993 the defendant was at a party with family and friends at a rented hall on Martin Luther King Boulevard. The party ended about 2:00 a.m. Christmas morning. The defendant left shortly before the party ended to take his mother, Joyce Palmer, home. He went back to the party for some food and other family members were gathering things to take home. Outside the hall the defendant fought with his cousin, Eddie Smith, and struck Eddie in the head with a jack handle and caused him to bleed. Family members separated the men and thought the fight was over. The defendant drove back to his mother's neighborhood.
Various vehicles transported other family members to their houses; many lived on the same block of Laharpe Street where the defendant's mother resided. Eddie left in a car with his mother, Geraldine Norman, his stepfather, his sister, Patricia, and Patricia's husband, Lawrence Lewis. Patricia and Lawrence lived in the other side of the double where the defendant's mother, Joyce Palmer, lived. Geraldine Norman lived down the block and Eddie lived nearby.
According to the testimony of Patricia, as soon as she and Lawrence went inside they heard gunshots and the defendant yelled: "Nigger, come out. Come out." She assumed the defendant thought Eddie was with them. Both Lawrence and Patricia testified that the defendant fired several bullets into the house and one bullet grazed Patricia's leg before they went down onto the floor.
Another group of family members went home in a truck. According to Shelly Smith, the defendant's wife, and Alfreda Smith, the defendant's aunt (by marriage) they were at the end of the block in front of Geraldine Norman's house when they heard shots and observed the defendant holding a gun. He was standing and talking or arguing with his mother, Joyce, who was trying to get him to leave. The relatives saw Eddie, who had no weapon, walking around the corner. When the defendant turned and saw Eddie, he shot Eddie three times.
The defendant and his mother, Joyce Palmer, testified that Eddie jumped on the *1037 defendant's back and there was a struggle for the gun when it went off. However, other family members/witnesses said Eddie had not reached the defendant when the defendant turned and fired. The defendant testified that he was drunk, but admitted that he drove his mother home, drove back to the party and back again safely. His mother testified that she let the defendant drive her home even though he "was wobbling a little bit." He made it to her house safely; he was able to drive. The defendant admitted that he fled the scene and threw the gun in the river. He conceded that he made arrangements to turn himself in later that day, but did not show up. He turned himself in two days later.
Detective Taylor testified about the investigation. He observed several bullet holes in the walls of Patricia's residence and one spent pellet was found inside.
Dr. Garcia testified that Eddie Smith was shot three times, twice in the front part of the body and once in the right shoulder.

AGGRAVATED BATTERY
The defendant argues that the State did not prove aggravated battery beyond a reasonable doubt, specifically the intent to inflict a battery on Patricia Norman. The standard of review for sufficiency of the evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Marshall, 94-1282 (La.App. 4th Cir. 6/29/95), 657 So.2d 1106.
Battery is the intentional use of force or violence on the person of another. La. R.S. 14:33. Aggravated battery is a battery committed with a dangerous weapon. La. R.S. 14:34. In the absence of qualifying provisions, the term "intent" refers to "general criminal intent." La.R.S. 14:11. An aggravated battery conviction requires proof of only general criminal intent or showing that the defendant in the ordinary course of human experience, must have adverted to prescribed criminal consequences as reasonably certain to result from the defendant's act or failure to act. La.R.S. 14:10; State v. Howard, 93-74 (La.App. 3d Cir. 11/2/94), 649 So.2d 489, writ denied, 94-2944 (La. 3/17/95), 651 So.2d 266.
The defendant fired into Patricia Norman's home. It was reasonably certain that someone might be shot when the defendant fired several shots into an occupied house. Spent shells were found inside the house and Det. Taylor testified that there were a number of holes in the walls. The injury was a reasonably certain consequence.
The defendant relies upon State v. Dauzat, 392 So.2d 393 (La.1980) for its holding that, where the evidence supports the greater charge, but does not support an element of the lesser charge, the conviction of the lesser charge must fall. That case is distinguishable. In Dauzat the defendant shot and missed the intended victim. The evidence supported the original charge of attempted second degree murder, but the element of physical contact essential to a battery was lacking. Here that essential element is not lacking. Patricia Norman was injured by the bullet intended for her brother. This assignment has no merit.

SECOND DEGREE MURDER
The defendant claims that the State's evidence did not prove second degree murder beyond a reasonable doubt; the State failed to rebut the defendant's evidence which proved he was intoxicated; the State's evidence proved only manslaughter.
Second degree murder is the killing of a human being when the perpetrator has the specific intent to kill or to inflict great bodily harm. La. 14:30.1. Specific intent is the state of mind "when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10. Specific intent may be inferred from the circumstances of the crime and the defendant's actions or activities. State v. Graham, 420 So.2d 1126 (La., 1982); State v. Marshall, 657 So.2d at 1106.
*1038 Where the circumstances indicate that an intoxicated condition precluded the presence of specific criminal intent, this constitutes a defense. La.R.S. 14:15. The defendant has the burden of proving his intoxication at the time of the offense and the State must negate the defense beyond a reasonable doubt. State v. Davis, 92-1623 (La. 5/23/94), 637 So.2d 1012, cert. denied, ___ U.S. ___, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994). The State must prove that specific intent was present despite the defendant's alleged intoxication. State v. Mitchell, 572 So.2d 800 (La.App. 4th Cir.1990), writ denied, 576 So.2d 47 (La.1991).
Although the defense elicited testimony from witnesses that the defendant was drinking at the party, only the defendant answered affirmatively when asked if he was intoxicated that night. He said: "I had a good bit of drinks." During cross-examination the defendant said that he was "drunk" but not "really smashed out of [his] mind." He admitted that he drove his mother home safely, drove back to the party and back to the neighborhood. When there was no place to park in front of his mother's house, he parked around the corner. The defendant's mother admitted on cross-examination that she was not afraid for her safety when the defendant drove her home. The defendant's thinking was sufficiently clear for him to throw his gun into the river after the shooting. The State carried its burden of proving that the defendant had the specific intent to kill or to cause great bodily injury in spite of his alleged intoxication.
The defendant argues that there were mitigating factors which reduce second degree murder to manslaughter. La.R.S. 14:31(A)(1) provides:
A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed....
"Sudden passion" and "heat of blood" are not elements of the crime, but can be mitigating factors which the jury can infer from the evidence. A defendant who establishes the mitigating factors by a preponderance of the evidence is entitled to a manslaughter verdict. On review this Court must determine whether viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the mitigating factors were not established by a preponderance of the evidence. State v. Lombard, 486 So.2d 106 (La.1986); State v. Landry, 499 So.2d 1320 (La.App. 4th Cir.1986).
Various witnesses/members of the family testified that the altercation between the defendant and the victim outside the hall appeared to be over after it was stopped by family members. The jury could reasonably have found that the defendant's "blood had actually cooled, or that an average person's blood would have cooled" by the time the defendant drove back to his mother's house and killed Eddie Smith.
There is no merit to this assignment.

EXCESSIVE SENTENCE
The defendant argues that his ten year sentence, the maximum for aggravated battery, is constitutionally excessive.
Article 1, § 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. The imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional rights against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). Maximum sentences are reserved for the most egregious and blameworthy offenders within a class. State v. Telsee, 425 So.2d 1251 (La. 1983).
To insure adequate review by the appellate court the record must first reflect that the trial court considered the aggravating and mitigating factors in La.C.Cr.P. art. 894.1. State v. Quebedeaux, 424 So.2d 1009 (La.1982). The court must state reasons for *1039 an apparently severe sentence by tailoring it to the individual offender and the particular offense. State v. Davis, 448 So.2d 645 (La. 1984).
Once compliance with La.C.Cr.P. art. 894.1 is established, the reviewing court must consider similar cases to determine whether the sentence is too severe considering the circumstances of the case. State v. Lewis, 468 So.2d 557 (La.1985). The trial court has wide discretion in sentencing and a sentence should not be set aside absent an abuse of that discretion. State v. Sweeney, 443 So.2d 522 (La.1983). A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Brogdon, 457 So.2d 616 (La.1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Caston, 477 So.2d 868 (La.App. 4th Cir.1985).
Here the trial court noted consideration of the guidelines and gave reasons for the maximum sentence. The trial court noted the seriousness of the offense of firing a gun into the home of loved ones, especially on Christmas morning. It further noted the totality of the circumstances; within a few moments the defendant shot and killed another victim. The trial court clearly justified the maximum sentence.
This Court has affirmed a maximum ten year sentence in a case where the defendant, a first offender who was involved in an auto accident with the victim, fired two rounds of.9 mm bullets at the victim and his van (which had two occupants until the shooting started). State v. Hawkins, 95-0028 (La. App. 4th Cir. 3/29/95), 653 So.2d 715.
The ten year sentence is not excessive. This assignment has no merit.
We have reviewed the record for errors patent and there are none.
The defendant's conviction and sentence are affirmed.
AFFIRMED.