JiSCHOTT, Chief Judge.
This comes to us on the application of the State of Louisiana to review the decision of an appellate division of the Criminal District Court of the Parish of Orleans reversing defendant’s conviction of simple battery. We reverse that decision and reinstate defendant’s conviction and sentence.
Defendant was charged with simple battery, a violation of La. R.S. 14:35, arising out of an incident which occurred on June 22, 1994. The defendant, a New Orleans police lieutenant, was first charged on June 23, 1994, with battery under the New Orleans Municipal Code. That ease was allotted to Section B of the Municipal Court. On July 28, 1994, Judge McConduit denied the city attorney’s request for a continuance and dismissed the municipal charge after the State was unable to proceed to trial. On August 10,1994, two counts of simple battery against the defendant were instituted in Criminal District Court. Judge Giarrusso of Magistrate Court denied the defendant’s Motion to Quash the bill of information based on double jeopardy. A bench trial was held November 2, 1995, after which the trial court found the defendant guilty on Count 1 and not guilty on Count 2. The defendant was sentenced on February 8, 1996 to serve three months in parish prison suspended, one year inactive probation with special conditions, including three hundred hours of community service, participation in a stress management ^program through Ochsner Clinic, and payment of various costs and fees.
An appeal was taken by the defendant pursuant to La. R.S. 13:1337 to the Appellate Division of the Criminal District Court. On October 8, 1996, that court reversed the judgment of the Magistrate Court concluding that 1) the evidence was insufficient; 2) that the institution of state charges, after the case was dismissed in Municipal Court, was barred by the rules of collateral estoppel and double jeopardy, and, 3) Judge McConduit’s decision to dismiss the charges was the equivalent of granting a Motion to Quash.
The victim, Robert Sandifer, testified as follows: On June 24, 1994, he was driving westbound on 1-10 toward New Orleans in the middle lane with his cruise control set at 55 mph, when a car in the left lane slowly passed him. A green Ford Taurus, driving much faster and approaching in the left lane, swerved from the left lane into the middle lane as it passed Sandifer’s car coming “awful close” to his car. Sandifer said, “slow down you stupid fool” to the driver of the other car, although Sandifer’s windows were up at the time. The driver of the other car, defendant Christopher Maurice, apparently saw Sandifer mouth the words and applied his brakes after he was several car lengths in front of Sandifer’s car. Defendant pulled his ear alongside Sandifer’s and Sandifer looked out of his window saying, “Yes, slow down you stupid fool”. Defendant then slowed down, pulled his vehicle behind Sandifer’s, and turned on his blue police lights. Sandi-fer pulled his vehicle over to the right shoulder of the Interstate.
Defendant approached Sandifer’s car, identified himself as a police officer, and asked him to exit his car. Sandifer got out of his car and asked defendant why he was pulled over. Defendant asked, “what was it that you called me, mother fucker”? Mr. Sandi-fer did not answer that question, but said, “I thought you were going to hit me.” Defendant repeated his question Ragain and got the same response from Sandifer. This conversation continued for about thirty to forty-five seconds, with defendant “getting a little more agitated.” Defendant ordered Sandifer to put his hands on the car and at the same time grabbed him from the back of his neck and threw him on the hood of the police car. The force of the impact caused Sandifer’s glasses to fly off and the left lens of the glasses fell to the ground. He suffered a cut above his left eye and near his lip. Defendant told him to put his hands on the car only one time, and he did not resist in any way. In fact, he did not have time to resist, as the command and the defendant’s actions occurred simultaneously.
He apologized to the defendant several times as he was held against the vehicle’s hood. Defendant released him warning that comments made to other motorists could result in his being harmed. He did not tell Sandifer that he was pulled over for speeding or for improper lane changing. The two men *61 separated, and Sandifer departed after the men shook hands. Sandifer drove away slowly so that defendant would pass him and he could note the officer’s license plate number. After doing so and arriving at work, he called the police department and made a complaint against defendant.
Defendant’s testimony which was quite different was as follows: Sandifer’s vehicle abruptly moved from the right lane into the center lane in front of his car; it “whipped into the middle lane” approximately one half car length in front of him. Defendant then moved into the left lane at which time Sandi-fer continued over and moved in front of him into the left lane. Before this move defendant saw or heard Sandifer say, “you’re an asshole”, to which he responded, “you’re talking to me, I’m an asshole”? Whereupon Sandifer rolled down his window and said, “you’re a fucking asshole”. Defendant was concerned because Sandifer seemed agitated, he was driving erratically, and there was a heavy volume of traffic including many school busses on the | interstate. Using his police lights he had Sandifer pull over to the median side of the interstate. He identified himself as a police officer and ordered Sandifer from the car. The victim did not comply but asked, “For what? What did I do? Why are you stopping me”? Defendant again asked Sandifer to step out of the vehicle and, when he complied, he asked him to walk to the back of the vehicle and place his hands on the police car. Sandifer continued to question why he was stopped, prompting defendant to place his hand by the victim’s shoulder and “begin to guide him toward the rear of his vehicle”. When Sandifer “got to a certain point”, he stiffened up and defendant again said, “put your hands on the car”. Sandifer responded, “You’re going to tell my why?”, and defendant “shoved him and put him on the car”. Defendant frisked him for weapons and Sandifer’s eye glasses fell off during this frisk, hit the hood of his vehicle and slid to the ground, causing the lens to pop out.
After defendant frisked him, he told him to pick up his glasses and to give him his driver’s license. They engaged in a conversation when Sandifer apologized to him saying that it “hadn’t been a good day for me”, and that he was a Christian begging for forgiveness and for a break. Defendant chastised him, but “gave him a break” when he saw that he lived in Slidell.
Anthony Hanson testified at trial as follows: He was driving east bound on Interstate 10 toward Slidell in the Michoud area of New Orleans East, when he saw two cars parked on the shoulder of the westbound lanes. There was a blue light on the dashboard of the second car and two men were standing between the cars. The man he thought was the police officer suddenly pounced on the other person and “... ‘slam-dunked’ him on the hood of the police car forcibly”. He did not see the victim’s glasses fall. He testified that he saw no resistance on the part of the victim.
Officer Joseph Hebert testified that he took a statement from Sandifer and 1 .^conducted a photographic lineup, after which Sandifer made a tentative identification of the defendant as the person who stopped him and slammed his head onto the hood of the police car.
The defense called Sergeant Samuel Lee, who testified regarding the proper use of force by police officers. He testified that a police officer, when presented with a hypothetical situation similar to what the defendant contended occurred in the present case, would be justified in using the force described by the victim, if a suspect resisted a police officer in any way, including verbally.
At the time of this incident defendant was in plain clothes driving an unmarked vehicle.
In this court the State first argues that the Appellate Division erred in finding that double jeopardy and collateral estoppel barred the State from charging and convicting the defendant in Criminal District Court after the judge in Municipal Court dismissed the charges. The Appellate Division found, in a per curiam opinion, “that collateral es-toppel and double jeopardy attached at the filing of the State charges .... the case was adjudicated once Judge McConduit issued a judgment of dismissal in Municipal Court. As a result ... reinstituting the same charge *62 [sic] the State level is barred by double jeopardy and collateral estoppel.”
“No person shall twice be put in jeopardy of life or liberty for the same offense ...” La. Const, art. 1 § 15; La.C.Cr.P. art. 591. When a defendant pleads not guilty and is tried without a jury, jeopardy attaches when the first witness is sworn at the trial on the merits. La.C.Cr.P. art. 592. Defendant relies on State v. Defiore, 610 So.2d 273 (La.App. 5th Cir.1992). On the day of trial in that case, four key witnesses including the victim did not appear. The assistant district attorney addressing the court stated, “The State will submit it as ... their failure to appear has prohibited [sic] my failure to go forward |6with this case”. The court responded “Again under the constitution to have a trial, its necessary to have witnesses to prove beyond a reasonable doubt. There is[sic] no witnesses. There is no case. So, the matter is concluded. Its just dismissed.” Subsequently the State filed a second bill of information charging the defendant with the same offense. The defendant filed a Motion to Quash on the grounds of double jeopardy, but the State argued that jeopardy had not attached because no witness had been sworn. The trial court granted the Motion to Quash. After reviewing the definition of the term “submit” and “submission”, the Court of Appeal concluded that the matter was submitted to the trial court for adjudication, and when it dismissed the charges, the defendant was acquitted and could not be prosecuted again for the same offense.
In the present case, however, unlike Def-iore, the matter was not submitted to the trial court and the trial court did not adjudicate the case when it dismissed the charges against the defendant. Judge McConduit’s testimony is clear that no evidence was presented, no witnesses testified, and his decision to dismiss the charges was based on the State’s inability to go forward to trial that day. Thus, the case was not “submitted” or “adjudicated” in the Municipal Court.
Likewise, the Appellate Division also erred in finding that collateral estoppel barred the State from pursuing the battery charge in Criminal District Court. Under the doctrine of collateral estoppel, when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future law suit. Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). As noted above, there was no final judgment in the Municipal Court on ultimate issues of fact. No testimony was presented, no evidence was introduced and the trial court did not 17adjudicate any of the factual issues in the case. Accordingly, the doctrine of collateral estoppel would not prevent the state in the present case from retrying the defendant on the battery charges.
The second stated reason for the Appellate Division’s decision was that Judge McConduit’s decision to dismiss the charges was the equivalent of granting a Motion to Quash because of the state’s multiple request for continuances. However, even if that were true, refiling of new charges upon dismissal of prosecution is prohibited only where the State is attempting to circumvent the time limitations for commencement of trial established by La.C.Cr.P. art. 578. That article provides that trial shall be commenced in misdemeanor cases within one year of the date of institution of prosecution. The charges in Municipal Court were pending for only one month when Judge McCon-duit dismissed the prosecution. Reinstitut-ing these charges in state court was not for the purpose of avoiding the time limitations of Article 578. Additionally, C.Cr.P. art. 572, provides that prosecution must be instituted in the present case within two years of when the offense was committed. Prosecution was instituted in Municipal Court within days of the offense and the State refiled charges in Criminal District Court within two months of the offense. Accordingly, the Appellate Division erred in concluding that Judge MeCon-duit’s dismissal of the charges was the equivalent of the granting of a Motion to Quash prohibiting the filing of new charges in State court.
The last reason given for its decision was that the evidence presented at trial was insufficient to support the conviction for simple battery. R.S. 13:1337(A), provides that an appeal properly taken to the Appellate *63 Division from Criminal District Court, shall “lie on questions of law and fact.” Thus, the Appellate Division has the authority to review questions of fact in criminal appeals arising from magistrate court.
IgThe Appellate Division specifically found that the evidence was insufficient applying the standard from Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), i.e., that a rational trier of fact could not conclude beyond a reasonable doubt that defendant was guilty of each element of the offense charged.
The Appellate Division failed to note that Jackson v. Virginia also requires an appellate court to accept the evidence in the light most favorable to the prosecution. An obvious corollary of this rule is that the reviewing court accepts the determinations of the trial court as to credibility. In this case, the trial court resolved the credibility issue in favor of Sandifer and against the defendant. Clear from the opinion of the Appellate Division was their own credibility determination in favor of the defendant which provided the basis for their reversal of the trial court.
The established principle that' the trial court is in a unique position to evaluate the credibility of the witnesses is entirely compatible with the idea in Jackson v. Virginia that the appellate court considers the facts in the light most favorable to the prosecution. Furthermore, we do not construe R.S. 13:1337(A)’s grant to the Appellate Division of the right to review facts to include an abrogation of the principle of deference by the reviewing court to the trier of fact in credibility determinations. The Appellate Division’s right to review facts is much the same as a court of appeal’s right to review facts under Art. 10 Section 10(B) of the Louisiana Constitution which does not authorize a reviewing court to reject reasonable credibility determinations of the trial court. Accordingly, the judgment of the Appellate Division is reversed and set aside and defendant’s conviction and sentence are affirmed.

APPELLATE DIVISION REVERSED; CONVICTION AND SENTENCE AFFIRMED.