699 So.2d 903 (1997)
STATE of Louisiana
v.
Ronald GRAVES.
No. 96-KA-1537.
Court of Appeal of Louisiana, Fourth Circuit.
September 10, 1997.
*904 Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for Defendant/Appellant, Ronald Graves.
Harry F. Connick, District Attorney, Val M. Solino, Assistant District Attorney of Orleans Parish, New Orleans, for Appellee, The State of Louisiana.
Before ARMSTRONG, LANDRIEU and MURRAY, JJ.
MURRAY, Judge.
Ronald Graves and John Kevin Johnson were charged with the first degree murder of Joseph Balog. On Graves' motion, the cases were severed for trial. A jury found Graves guilty as charged, and recommended life imprisonment. On July 7, 1995, he was sentenced to serve life imprisonment without benefit of parole, probation, or suspension of sentence. Graves appeals his conviction, assigning two errors by the trial court: (1) the evidence was insufficient to show that he intended to kill or inflict great bodily harm upon more than one person; (2) the admission of his testimony from an earlier trial, which resulted in a mistrial, violated his Fifth Amendment right not to testify. We affirm.

FACTS:
At midnight on November 11, 1993, Joseph Balog and Charlie Burks drove from Gulfport, Mississippi, to the French Quarter in New Orleans. They went first to the Maiden Voyage and then to Molly's Irish Pub on Bourbon Street. After checking on their truck, the two men headed back to Bourbon Street. Enroute, they encountered four men, one of whom men yelled, "We're going to get some faggots." Charlie Burks yelled the same thing back to the four men.
Burks and Balog walked approximately one block further before turning around to return to their truck. At that point, one of the four men came from around the corner and confronted Burks, who then heard Balog yell. Burks turned to see Balog on the ground surrounded by two men. Burks then was hit, and fell to the ground. He jumped up and ran to get help. As he was running, he heard someone say, "you'd better save your homey." He eventually flagged down a cab. Once in the cab he realized that he had been stabbed in the side. The cab driver took Burks to Charity Hospital, where he underwent exploratory surgery in the area where the stab wound had been inflicted. The jury was shown the scars left from the surgery and stabbing.
Detective Norman McCord was the first police officer to arrive at the scene. By that time, Balog, who had been stabbed seven times, had been transported to Charity Hospital where he died of his wounds. All of the wounds were inflicted by a single-edged knife, but only four of the wounds were lethal. Two single-edged knives were found near the scene of the murder: a knife with a black handle was located in an alley; a knife *905 with a red handle was thrown on a second floor balcony. Latent prints were taken from the knife with the black handle; they did not match Graves' prints. There was human blood on the red knife.
Four suspects were developed during the course of the investigation: Grant Gunderson, Ronald Graves, Mingo Graham, and Kevin Johnson. Gunderson and Graham gave a recorded statement to the police. In an unrecorded statement given to Detective McCord, Graves stated that a fight broke out in Jefferson Parish; during that fight he had pulled a knife and held it to a man's neck, but did not cut the man. He also told the detective that the knife with the black handle was not his. He said that he owned a knife with a red handle, but had lost the knife.
Both Gunderson and Graham accepted a plea bargain with the state in exchange for their testimony at Graves' trial. Both pled guilty to accessory after the fact of first degree murder.
Gunderson testified that he drove to the French Quarter in a separate car from Johnson, Graves and Graham on the night in question. They did not go to any place in particular, but mostly walked around. He stepped into Lafitte's in Exile to buy a beer. When Graham informed him that Lafitte's was a gay bar, he left abruptly. However, while inside he noticed that Balog and Burks were seated at a corner table inside the bar.
When Gunderson exited the bar, he noticed that Graves, Graham, and Johnson were talking to someone in a 300ZX. The car sped away, and the others chased after the car. It was getting late, and Gunderson decided it was time to go home. He felt that Balog and Burks, who were behind him but on the other side of the street, were following him. He turned around and cut diagonally across the street. When he neared the two men, Balog shoved him and said, "Get out of my way faggot." Graves then ran up and shoved Balog, and a fist fight ensued. Gunderson ran for his car, and passed Graham on the street.
Enroute to Metairie on the interstate, he saw Graham, Johnson and Graves. He flashed his lights, and the two cars pulled along side each other on the interstate. He and Graham got out of their cars and agreed to meet at a Time Saver on Causeway Boulevard. Graham told Gunderson that Graves had stabbed the man in the French Quarter.
When they got to the Time Saver, Graves and Johnson went to the bathroom. Graham left to go home, and Johnson and Graves rode with Gunderson. Gunderson said that during the ride they were excited about stabbing the man in the French Quarter.
Mingo Graham testified that he and Graves were roommates. That evening, he asked Graves if he could borrow his pocket knife. Graham wanted to use the knife to cut back a piece of skin from around a bad fingernail. Before Graves could get his knife from his pocket, Johnson volunteered his knife. Johnson's knife had a single blade and a black handle.
Graham testified that when they were walking back to their cars that night, some men in a 300ZX shouted obscenities at Johnson, who chased after the car. Graham watched to make sure the car did not return. When he turned to tell his friends that the car was gone, he heard Gunderson tell two men that he was not a faggot. Graves and Johnson attacked the two men. Graham stated that Graves went after Balog, and Johnson went after Burks, but in the end, both Graves and Johnson were beating Balog. When Burks ran away, Graham asked him whether he was going to help his homey.
Once inside the car, Graves told them that he stabbed the man and threw away his knife. Both Graves and Johnson stated that they stabbed both men. Graham testified that the black handled knife recovered by the police was similar to the knife carried by Johnson that night. He also testified that the red handled knife was similar to the one carried by his roommate, Graves. Although Graham presently has a knife on his key ring, he denied having a knife on the night of the murder.
Finally, the jury heard a tape of Ronald Graves' testimony at his first trial.[1] At that *906 time Graves testified that he and Graham had gone to a bar named Key West where they met up with Johnson and Gunderson. When they were leaving the bar, an altercation occurred between some people and Gunderson. One of the people threw a bottle at Gunderson's car and broke the windshield. Even though Graves was not in Gunderson's car, one of the people came at him with a crowbar. Graham reached over him and cut the person on the face with a small red knife similar to the one entered in evidence.
Eventually, they went to the French Quarter. In his testimony, Graves alluded to the incident regarding Gunderson's attempt to enter a gay bar, and the incident with the people in the 300ZX. He stated that they were merely walking along when Gunderson mentioned that he thought two men were following them. Graves also said that Gunderson, who wanted to mess with the two men, turned around and intentionally bumped into them. A fight ensued. Gunderson fought with Charlie Burks, and Graham and Johnson fought with Joseph Balog. When Burks broke free of Gunderson, Graves and Gunderson chased after him. Graves testified that he turned around when he ran out of breath. He saw that Graham and Johnson were still beating Balog. When he tried to pull Graham off of Balog, he got blood on his hands. Graves started walking towards the car to avoid any further trouble. Graham and Johnson ran past him and reached the car first. When they got to the Time Saver later that evening, he said that he and Johnson went to the bathroom to wash the blood off of their hands. He did not know whether Graham washed his hands. Finally, Graves testified that the red knife in evidence was his. On the ring with the knife was a key to his car. He stated that Graham had his car key because Graham had taken his car to the shop to be fixed and had kept the key.
The defense presented no witnesses.

ERRORS PATENT:
A review of the minute entry of sentencing shows that Ronald Graves was sentenced on the same day as his motion for judgment of acquittal or modification of verdict was denied. La.C.Cr.P. art. 873 requires that a twenty-four hour delay be observed between the denial of a motion for new trial or in arrest of judgment and sentencing. However, the failure to observe the delay is harmless error where a defendant does not challenge his sentence on appeal. State v. Collins, 584 So.2d 356 (La.App. 4 Cir.1991). Graves has not challenged his sentence, and this error, therefore, is deemed harmless. No other errors patent were found.

ASSIGNMENT OF ERROR:
Graves contends that there is insufficient evidence to support his conviction of first degree murder.
First degree murder is defined in pertinent part as: "[T]he killing of a human being: (3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person; ..." La. R.S. 14:30. Graves argues that the state showed only that he may have been one of the people yelling that they were going to "get some faggots," but it failed to show that he either hit or chased Charlie Burks. He also argues that no evidence was presented to show that he expressed any prior intent to hurt anyone.
In State v. Marshall, 94-1282 (La. App. 4 Cir. 6/29/95), 657 So.2d 1106, this Court reviewed the law applicable to this case:
Sufficient evidence of intent to kill has been found where the defendant shot a gun at the victim. State v. Davis, 93-0663 (La.App. 4 Cir. 2/25/94); 633 So.2d 822; State v. Pittman, 604 So.2d 172 (La. App. 4th Cir.1992), writ denied, 610 So.2d 796 (La.1993).
A principal is defined as a person concerned in the commission of a crime, whether present or absent, and whether he directly commits the act constituting the offense, aids and abets in its commission, or directly or indirectly counsels or procures another to commit the crime. La. R.S. 14:24. Only persons who knowingly participate in the planning or execution of a crime are principals. Mere presence at the scene is not enough. State v. Pierre, 93-0893 (La.2/3/94); 631 So.2d 427. An *907 individual may only be convicted as a principal for a crime for which he personally has the requisite mental state. State v. Holmes, 388 So.2d 722 (La.1980).
Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific criminal intent may be proved by direct evidence or inferred from the actions of the defendant or the circumstances present. State v. Hawkins, 93-1260 (La. App. 4th Cir. 1/27/94); 631 So.2d 1288, writ denied, 94-0301 (La.6/24/94); 640 So.2d 1341.
Under Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), to determine sufficiency of the evidence a reviewing court must decide whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.
Kevin Pollard testified that he saw the defendant with a gun and Cains [the victim] fall to the ground when the first shot was fired. Anthony Thomas testified that the defendant had two guns in his hands when Bowens [the codefendant] fired repeated shots into Cains. Both witnesses saw Bowens and the defendant flee. Williams stated that he heard two guns and Officer Leary, the firearms expert, could not determine whether two 9 mm guns were involved. Defense witnesses, Williams, Marzett, Ford, and Quinn, place the defendant near the courtyard at the time of the shooting. Only Ms. Elzy and Ms. Williams, who were not certain as to the time of the defendant's arrival at the meeting, testified that he was elsewhere.
The jury made credibility determinations and could have reasonably inferred the requisite specific intent. When viewed in the light most favorable to the prosecution, the evidence is sufficient to prove beyond a reasonable doubt that the defendant actively participated in or aided and abetted in the commission of the killing of Cains with the specific intent to kill or to inflict great bodily harm.
Marshall, 94-1282 at pp. 5-6, 657 So.2d at 1108-09.
Graves cites two cases in support of his argument that the state failed to show that he had the requisite intent to kill or injure more than one person.
In State v. Butler, 557 So.2d 471 (La.App. 4 Cir.), writ denied, 566 So.2d 394 (La.1990), two victims were severely beaten. One of the victims, Louise Kates survived. Ms. Kates testified that on the day of the beatings, the victim knocked on the common wall of their home. She went to his house and saw Paul Butler kneeling. He had taken the victim's money and gun. Thomas Butler, the co-defendant, grabbed Ms. Kates and wanted to know what business it was of hers. He then beat her. This Court found that in addition to the lack of evidence showing which brother killed the victim, no evidence existed to show that Paul Butler intended to inflict harm on Ms. Kates.
The second case cited is State v. Culberth, 390 So.2d 847 (La.1980). In that case, the victim and two companions were walking toward a bus stop when the defendant called to her. She walked backed toward him. After a few moments, the victim's companions turned to look for her and saw the defendant stabbing her. When one of the companions approached, the defendant came towards the companion with his knife and said, "You're next." The companion threw a bottle at the defendant and retreated behind a car. The defendant returned to the victim and stabbed her again. The jury found the defendant guilty as charged of first degree murder and recommended the death penalty based in part on the aggravating circumstance of "knowingly creating a risk of death or great bodily harm to more than one person."
The Supreme Court affirmed the conviction, but reversed the death sentence because none of the aggravating circumstances, including the one listed above, were supported by the record. The Court found that although the defendant threatened the companion, when the companion retreated behind a car, the defendant did not pursue him. Instead the victim returned to stab the victim *908 again and did not attack anyone after the incident.
Here, it appears that the attack upon Joseph Balog and Charlie Burks resulted in part because of the perception by Ronald Graves and his friends that the two men were homosexuals. In essence, Graves concedes this in his argument. Therefore, unlike the cases relied upon by him, there is evidence that he had an initial intent to harass both of the two men.
The testimony presented at trial shows that Graves and Kevin Johnson were involved in the physical attack of Balog and Burks. Although Graves, in his prior testimony, indicated Mingo Graham was one of the assailants, the jury apparently did not believe him. It chose, instead, to believe the testimony of Mingo Graham and Grant Gunderson. The jury's credibility determination should not be disturbed because it is not clearly contrary to the evidence. See State v. Harris, 624 So.2d 443 (La.App. 4 Cir.1993), writ denied, 93-2609 (La.6/24/94) 640 So.2d 1339; State v. Cashen, 544 So.2d 1268 (La. App. 4 Cir.1989). Graves told Detective McCord that in an incident earlier that night, in Jefferson Parish, he had pulled a knife on someone, but did not cut the person. He also told him that he owned a knife with a red handle, although he claimed that he had lost it. In his first trial, he admitted that the red knife in evidence, which was on a key ring with his car key, was his. However, he testified that Graham, who had taken his car to the shop to be fixed, had kept the key. Graves admitted washing blood from his hands after the murder. There was testimony that he had bragged about the stabbings.
Both victims were stabbed, although only Joseph Balog died of his wounds. In light of the Graves' group presumption that Balog and Burks were homosexual, the fact that Burks escaped after being stabbed only once does not negate Graves' desire to cause great bodily harm to both men. Nor does the fact that the testimony suggests that he actually stabbed only Joseph Balog negate his desire to inflict harm on both men. Based on the number of times that Balog was stabbed, it is likely that Burks also would have been stabbed a number of times had he not escaped. This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR
By this assignment of error, Graves contends that the district court erred in permitting the state to introduce at the retrial the transcript and tape of his testimony at the earlier trial. The Louisiana Supreme Court in State v. Parker, 436 So.2d 495 (La. 1983) stated:
In State v. Reed, 324 So.2d 373 (La. 1975), this court applied the long-standing federal rule in this area that a defendant in a criminal case who takes the stand in his own behalf and testifies without asserting his privilege against self-incrimination thereby waives the privilege as to the testimony given so that it may be used against him in a subsequent trial of the same case. Id. at 380. See, Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); United States v. Bohle, 475 F.2d 872 (2nd Cir.1973); Edmonds v. United States, 106 U.S.App.D.C. 373, 273 F.2d 108 (1959), cert. denied, 362 U.S. 977, 80 S.Ct. 1062, 4 L.Ed.2d 1012. Not only is this the federal rule, but numerous other states have also provided that when a defendant testifies at a first trial but not at the second, his prior testimony may be used against him. See, e.g. State v. Norwood, 217 Kan. 150, 535 P.2d 996 (1975); State v. Slone, 45 Ohio App.2d 24, 74 Ohio Ops.2d 66, 340 N.E.2d 413 (1975); Chavez v. State, 508 S.W.2d 384 (Tex.Cr.App.1974); Harbaugh v. Commonwealth, 209 Va. 695, 167 S.E.2d 329 (1969). See generally, Cook; Constitutional Rights of the AccusedTrial Rights, Sec. 66 (1974). Therefore, the introduction of the transcript did not violate defendant's privilege against self-incrimination.
Parker, 436 So.2d at 498-499.
Graves presents no exception to the rule announced in Parker. Thus, his pro se assignment of error also is without merit.
Accordingly, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The tape was accompanied by a transcript of the testimony.