724 So.2d 258 (1998)
STATE of Louisiana
v.
Renita M. SCIORTINO.
No. 98-K-2418.
Court of Appeal of Louisiana, Fourth Circuit.
November 25, 1998.
*259 Harry F. Connick, District Attorney of Orleans Parish, Theresa A. Tamburo, Assistant District Attorney of Orleans Parish, New Orleans, for the State of Louisiana.
Before PLOTKIN, JONES and WALTZER, JJ.
PLOTKIN, Judge.
On December 7, 1995, the State filed a bill of information charging the defendant, Renita Sciortino, with one count of attempted intentional interference of custody, a violation of La. R.S. 14:27(45.1). The defendant entered a not guilty plea on November 27, 1996. Trial was held before a magistrate commissioner on August 11, 1997. The defendant was found guilty. On September 8, 1997 she was sentenced to serve sixty days in parish prison, suspended, placed on one year inactive probation, and ordered to pay a fine of $150.00 to the Judicial Expense Fund, which she paid on September 29, 1997.
The defendant appealed to the Appellate Division of Criminal District Court. On September 4, 1998, the three-judge panel, with one judge dissenting, reversed the conviction and sentence and entered a judgment of acquittal. On September 16, 1998, the State gave written notice of its intent to seek writs in this Court and this timely writ application followed.

FACTS
On September 19, 1995, Maurice Sciortino arrived home with his two minor daughters, Jina and Nina. After exiting their vehicle, defendant, Renita Sciortino, the girls' mother approached them, grabbing on to Jina, then four years old. Nina, then twelve years old, held on to Jina's hand in an attempt to retain control over her younger sister. Nina alleges that her mother pushed her to the ground, yelling, "Give me Jina." Defendant denied pushing Nina and testified she only hugged Jina and told her she loved her and they would be together soon. Mr. Sciortino eventually unlocked the doors to the car and the girls were able to re-enter the vehicle. Simultaneously, defendant ran to her vehicle and proceeded to leave the scene, apparently signaling to other parked vehicles to leave the scene also. Mr. Sciortino drove around the block several times to ensure that defendant had indeed left the area. Once he believed it was safe, he parked the car and brought the girls into the house. He promptly telephoned the police and reported the incident.
Mr. Sciortino further testified that he has sole custody of the children and that the defendant did not have visitation rights. He identified two judgments from Civil District Court given to him in which he was granted custody. The first, dated May 24, 1994, showed that the defendant was present in proper person. The second, dated September 13, 1994, showed that the defendant was absent and unrepresented.
The defendant further testified that, at the time of the incident, she did not realize that she did not have visitation rights. The defendant averred that the court date had been changed and she did not have the opportunity to be present. She also testified that she had never received a copy of the judgment of September 13, 1994, or any other document in 1994. She stated that she did not become aware of the judgment until she was arrested for kidnapping in October 1995.
On cross-examination, the defendant again testified that she did not know Mr. Sciortino had sole custody of the children. When presented with the May 24, 1994 judgment, which gave "physical possession" of the children *260 to Maurice, she stated that she understood that nothing was decided on that date, but she did know there was going to be a judgment. The defendant also stated that she had counsel but he failed to appear. She denied having any knowledge of the September 13, 1994 judgment and, when she inquired about what happened on the scheduled court dates, "no answer was given." The defendant admitted that, at the time of the judgments, her address was 454 Shallow, Marion, Arkansas. She further testified that, at one time, she had custody, and that the matter was continually reset. When asked if she ever visited the children in New Orleans, the defendant replied that she could not see them because Maurice Sciortino lived on the second floor, would not answer his door, and he would not bring the children out. Even when they came outside, the children would be taken straight to the car and locked in.
On redirect, the defendant testified that, after learning of the September 1994 judgment, she sought to modify it. The defendant testified that she had obtained visitation rights beginning in November 1995, but had not seen the children in four and one-half years.
At the conclusion of the defendant's testimony, the State informed the court that it had no rebuttal witnesses. Nevertheless, the trial court stated it wished to hear further testimony from Maurice Sciortino and questioned him. The court asked Mr. Sciortino if he knew whether the defendant was "aware of these judgments?" Mr. Sciortino replied that he was told "that the law had a way of presenting these judgements (sic) to her." He understood it to be by mail through the "long arm of the law" which the court clarified as the "long arm statute." Mr. Sciortino emphasized that he had been assured that the defendant would be served "in ample time," but he did not know at what time the service would occur. The court asked him if he had any doubt that the defendant knew about the judgment granting sole custody to him, and Mr. Sciortino stated he had no doubt that the defendant knew, but did not care about the law.
After the court finished questioning Mr. Sciortino, defense counsel asked to pose a few more questions, because he had previously objected to that line of questioning by the State and the court had sustained it. Counsel asked Mr. Sciortino who had told him about the defendant being served. Mr. Sciortino testified that his attorney told him "that she was served and that she will be served." When counsel attempted to pin the witness down as to whether the attorney said the defendant had already been served or if he had seen a return receipt, the State objected. The court stopped the questioning.
After considering all of the above testimony, the court found the defendant guilty as charged.

DISCUSSION
In the brief defendant filed in the Appellate Division, a copy of which is attached to the State's writ application, the defendant argued that the State failed to carry its burden of proof. Specifically, the defendant argued that the State failed to prove that she had the specific intent to detain or conceal a child from a parent having legal custody pursuant to a court order because the State never produced any evidence that the defendant had notice of the September 1994 judgment which granted Mr. Sciortino sole custody of the children and deprived the defendant of visitation pending further orders of the court. The defendant further argued that the only evidence of notice was the hearsay testimony of Mr. Sciortino that his attorney told him the defendant would be served with a copy of the judgment. The Appellate Division apparently found this argument meritorious, reversed the defendant's conviction and sentence, and entered a judgment of acquittal. The State now seeks reversal of this decision and reinstatement of the trial court's original finding of guilt.[1]
*261 The defendant was convicted of violating La. R.S. 14:27(45.1). La. R.S. 14:45.1, interference with the custody of a child, defines the offense, in part, as "the intentional taking, enticing, or decoying away of a minor child by a parent not having a right of custody, with the intent to detain or conceal such child from a parent having a right of custody pursuant to a court order...." [Emphasis added.] Clearly, by the terms of the statute, a necessary element of the offense is that the parent from whom the child is taken has legal custody. Furthermore, the attempt statute, La. R.S. 14:27, requires a specific intent to commit the underlying offense.
Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow from his act or failure to act. La. R.S. 14:10(1); State v. Marshall, 94-1282 (La.App. 4th Cir.6/29/95), 657 So.2d 1106. Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Maxie, 93-2158 (La.4/10/95), 653 So.2d 526; State v. Graham, 420 So.2d 1126 (La. 1982).
When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012. This is not a separate test from Jackson v. Virginia, but is instead an evidentiary guideline for the fact-finder when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984); State v. Addison, 94-2431 (La. App. 4th Cir.11/30/95), 665 So.2d 1224.
As the State argues in its writ application, the trier of fact in this case clearly rejected the defendant's testimony at least in part. The defendant denied she was attempting to "take" Jina and only wanted to hold her. Nina Sciortino testified that the defendant tried to pull the younger child away while yelling "Give me Jina." The defendant's brief does not contest this aspect of the crime. Instead, as the State concedes, the defendant's knowledge of the court order granting her former husband custody became the central issue in the proceedings in the Appellate Division. The State argued that the circumstantial evidence was sufficient to show this knowledge. The circumstantial evidence cited by the State was the testimony of Mr. Sciortino that his counsel informed him the judgment would be served, that the May and September 1994 judgments gave Mr. Sciortino custody, and that the defendant testified she was represented by counsel throughout the 1994 proceedings.
The defense argued to the Appellate Division, in contrast, that there was no evidence that the defendant received notice of the September 1994 judgment, and that Mr. Sciortino's testimony that his attorney told him the defendant would be served with the September judgment was hearsay and not enough to rebut the defendant's testimony that she had not received the judgment.
The first judgment admitted at the trial was dated May 24, 1994. The defendant was present without counsel. The judgment states that the minor children are to remain in the "physical possession" of their father "until such time as the Court hears all matters relative to jurisdiction and custody" and *262 in no way gives Mr. Sciortino legal custody of the children. The judgment makes no mention of visitation. The judgment does include mutual restraining orders between Renita and Maurice Sciortino but does not prohibit the defendant from seeing her children. Finally, the judgment provides that the parties and their children undergo evaluations and, upon completion of the evaluations, the issue of custody was reset to September 13, 1994. Presumably, the defendant did have notice that the custody issue would be considered on September 13 th because that date was set at the hearing when she was present. Although she testified that she did not know the hearing went forward, believing that it would be reset, the trial court apparently found the defendant not to be a credible witness.
The defendant is correct that the State presented no evidence to show that the defendant had actual or presumptive legal notice of the September 13, 1994 judgment which granted legal sole custody of the children to Maurice Sciortino and denied visitation rights to the defendant pending further orders of the court. The defendant was not present at that proceeding nor was her counsel there. The evidence elicited by the trial court from Mr. Sciortino, after the State rested its case, was hearsay, and was equivocal at best. However, there was other circumstantial evidence to show knowledge. First, the defendant's address for long-arm service, as reflected on the judgment, was admitted by the defendant at trial to be her correct address at the time. Second, the defendant testified that her statement to her daughter Jina at the time of the incident was that she "would be with her when the Courts (sic) get through." This testimony certainly leads to a permissible inference that the defendant knew that the "courts" had not yet given her permission to be with Jina, as in fact, they had not. Considering this evidence in the light most favorable to the State, it does not appear that a rational trier of fact could not conclude that the defendant intended to take the child from the parent with legal custody.
It appears that the Appellate Division's decision rested on the fact that the trial court, after the State had completed its case, questioned Mr. Sciortino on whether service of the September 1994 judgment had been made on the defendant. The trial court's action may have led the Appellate Division to conclude that the trial court had not found that the State had proved the defendant's specific intent without this additional evidence. Because that evidence was hearsay in that it was used to prove the truth of the matter asserted, i.e., that the defendant had been served with the judgment, it should not have been elicited by the trial court because it did not fall within any exceptions to the hearsay rule. La. C.E. arts. 801C and 802.[2] However, reversal on the grounds of sufficiency is not necessarily the appropriate outcome when inadmissible hearsay forms part of the evidence. The appropriate methodology to evaluate the sufficiency of evidence when it consists in part of inadmissible hearsay was set forth by the Supreme Court as follows:
When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot.
On the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial.
State v. Hearold, 603 So.2d 731, 734 (La. 1992).
*263 Under Hearold, the Appellate Division should have concluded that, considering the inadmissible hearsay, there was sufficient evidence to convict the defendant. The real question would be whether the erroneous admission of the hearsay was harmless. In order for an error to be harmless, it must be shown beyond a reasonable doubt that the complained-of error did not contribute to the verdict. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The guilty verdict actually rendered in the trial must be unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
Considering the trial court's actions in this matter, and the very limited evidence otherwise to show the defendant's knowledge of the custody order, the admission of the hearsay in this case was not harmless.
Accordingly, the decision of the Appellate Division is reversed and the matter remanded to the magistrate commissioner for a new trial under Hearold.
WRIT GRANTED; REMANDED FOR NEW TRIAL.
NOTES
[1] La. R.S. 13:1337(A) provides that an appeal properly taken to the Appellate Division from Criminal District, shall "lie on questions of law and fact." Therefore, the Appellate Division possesses the authority to review questions of fact in appeals arising from Magistrate court. State v. Maurice, 96-2268 (La.App. 4th Cir. 12/4/96), 686 So.2d 58, writ denied 97-0400 (La.3/27/97), 692 So.2d 396. However, La. R.S. 13.1337(A) should not be construed to permit the Appellate Division to abrogate the principle of deference by the reviewing court to the trier of fact in credibility determinations; instead the Appellate Division's authority to review facts should be equated to that of a court's of appeal. Id. Therefore, the Appellate Division's decision to reverse on the grounds of insufficient evidence should be based on the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to wit, whether a rational trier of fact could not conclude beyond a reasonable doubt that the defendant was guilty of each element of the offense charged.
[2] The State in its writ application avers that the defense did not object to this hearsay. Considering that the trial court on its own elicited the testimony, such an objection would have been a vain and useless act. Furthermore, when the State attempted to elicit this testimony during its direct examination of Mr. Sciortino, the defense did object, and the objection was sustained. Defense counsel reminded the trial court of its previous ruling after the trial court concluded its questioning of Mr. Sciortino.